# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KIM WECKBACHER, | Case No. 2:16-cv-01187 |
| Plaintiff, | |
| v. | JUDGE ALGENON L. MARBLEY |
| MEMORIAL HEALTH SYSTEM MARIETTA MEMORIAL HOSPITAL, | Magistrate Judge Vascura |
| Defendant. | |

| | |
|---|---|
| LYNNETT MYERS, et al., | Case No. 2:17-cv-00438 |
| Plaintiffs, | |
| v. | JUDGE ALGENON L. MARBLEY |
| MEMORIAL HEALTH SYSTEM MARIETTA MEMORIAL HOSPITAL | Magistrate Judge Vascura |
| Defendant. | |

| | |
|---|---|
| JOSHUA BOOTH, | Case No. 2:17-cv-00439 |
| Plaintiff, | |
| v. | JUDGE ALGENON L. MARBLEY |
| MEMORIAL HEALTH SYSTEM MARIETTA MEMORIAL HOSPITAL | Magistrate Judge Vascura |
| Defendant. | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion for a New Trial. (Doc. 80.)[1] For the reasons set forth below, the Court **DENIES** the Motion [#80].

**II. BACKGROUND**

Beginning on November 12, 2019, the Court presided over a seven-day jury trial in this case. At issue were Plaintiffs Kim Weckbacher, Lynette Myers, Carol Butler, and Joshua Booth's claims for Retaliation under the Fair Labor Standards Act, and Plaintiffs Myers and Butler's claims for Tortious Interference with a Business Relationship under Ohio state law. On November 20, 2019, the jury returned a verdict in favor of Defendant Marietta Memorial Hospital on all counts. Plaintiffs have now filed this Motion for a New Trial.

**III. STANDARD OF REVIEW**

Federal Rule of Civil Procedure 59(a) provides that the Court may, on motion, grant a new trial on all or some of the issues—and to any party—after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court. Fed. R. Civ. P. 59(a). Courts "have interpreted this language to mean that a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the unmoving party in some fashion, *i.e.,* the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045-46 (6th Cir. 1996). The authority to grant a new trial "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chemical*

---

[1] This is a consolidated matter. All references to the Court's docket pertain to case number 16-cv-01187.

*Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). However, "while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached." *Bruner v. Dunaway*, 684 F.2d 422, 425 (6th Cir. 1982).

## IV. ANALYSIS

Plaintiffs advance three grounds for seeking a new trial: (1) Defendant made improper and misleading statements during closing argument; (2) Defendant violated the "Golden Rule" during closing argument; and (3) the jury's verdict was against the weight of the evidence. The Court will address each argument, in turn, below.

### 1. Whether Defendant Made Improper and Misleading Statements During Closing Argument

Plaintiffs contend that the Court should order a new trial because Defendant made several misleading statements during closing argument that possibly misled the jury. Specifically, Plaintiffs assert that it was improper for Defendant to: (1) reference Plaintiffs' ability to receive justice in their wage and hour class-action case; (2) reference the merits of the class-action case; and (3) refer to admitted testimony as hearsay.

The Sixth Circuit has instructed that "counsel should not introduce extraneous matters before the jury, or, by questions or remarks, endeavor to bring before it unrelated subjects, and, where there is a reasonable probability that the verdict of a jury has been influenced by such conduct, it should be set aside." *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980) (internal quotations and citation omitted). In determining whether there is a reasonable probability that a jury verdict has been influenced by improper conduct, "a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner

3

in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself." *Id.*

First, Plaintiffs argue that it was improper for Defendant to suggest to the jury that Plaintiffs could receive the justice they sought in this case by prevailing in their upcoming wage and hour class-action suit. Plaintiffs take particular issue with the following statement:

> And the other thing that I need to mention concerning kind of this I'm going to call it self-righteous approach that we're just here so it doesn't happen to anybody else, we're just here one time, we've got one opportunity to ask for your verdict, it's not true. You already know it's not true. They've got this other case. They've got the big class action wage and hour case. So they're coming back. This is not their one time. This is their first time. Their second time is going to be in July when another jury is going to sit here and decide that wage and hour class case in front of Judge Marbley with these same lawyers, this same crew, those four same plaintiffs. They're coming back. So this isn't their one time.

(Doc. 80 at 5.) Plaintiffs maintain that this statement misled the jury into believing Plaintiffs would have "a second bite at the apple" and prejudiced the jury by providing them with the opportunity "to pass the buck to some future jury." The Court disagrees.

As a threshold matter, Plaintiffs failed to raise any objections during Defendant's closing argument. Plaintiffs, therefore, face a higher burden in establishing prejudice. *See Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 315 (6th Cir. 2016) ("We require a heightened showing of prejudice when, as here, a party fails to object."). With respect to the merits of Plaintiffs' argument, common sense alone would have led the jury to recognize that this case and the class-action suit involved distinct issues. Indeed, otherwise, there would have been no need for the jury to sit through seven days of trial in this case. Moreover, Plaintiffs had the opportunity to cure any misstatements during their rebuttal argument, and they did so:

> I told you this was their one chance at justice. Mr. Davidson says, no, it's not, they got another chance this summer. That case is on behalf of 2,000 plus people, not just these four. If they win, they're going to get money for the lunches they worked through and didn't get paid for. That's not this. It has nothing to do with them getting retaliated against. You are their only chance at justice in the retaliation case. They're four of the 2,000

plaintiffs, just people trying to get paid for working through their lunch break. Don't let him deceive you into thinking that trial coming up this summer has anything to do with them getting retaliated against. It does not. This is their only chance at justice for being retaliated against.

(Doc. 87 at 6.) Given this rebuttal argument, it is difficult to imagine the jury was left questioning whether Plaintiffs would have another opportunity to litigate their retaliation claims during the class-action case.

Plaintiffs also argue that Defendant made improper references to the merits of the wage and hour class-action lawsuit. Plaintiffs point to the following statements as evidence that Defendant ignored the Court's in limine ruling, which instructed the parties to refrain from attempting to litigate the class-action suit in this forum:

> The next thing I want to talk to you about is I think an effort to convince you that because there are four people involved in this case, something bad must have happened. It just didn't happen to one person, it happened to four people. Well. Each of them has an individual story which you've heard about and we'll discuss a little bit more. But you've also heard there is more than 2,000 others.
>
> . . .
>
> But let me talk to you and let me show you what it means to be four people out of a couple of thousand who claim that they're retaliated against. So we've done representation here, and this is a nice picture of the hospital on a nice summer day, unlike today. And you see what it looks like with respect to these class members depicted in blue over two thousand people who are in that class, and then here is the four that claim retaliation. There are no other claims out of over two thousand people, no other claims; just these four.
>
> And Mr. Babin asked the question -- I don't even remember of whom, but it was yesterday. Isn't it easier to retaliate against four people than two thousand people? I don't think it's easy to retaliate against anybody; and certainly the hospital didn't. But what did they accomplish if they had in fact retaliated against these four people, if you believe that for a moment? What did they accomplish? There's still two thousand people out there in this class, in this case that's going to be decided next July.
>
> . . .
>
> This wage and hour case, one last comment about it. The Fair Labor Standards Act does not require an employer to offer breaks. It does not require an employer to make certain that people have lunches. It requires that employers pay people for the time worked. And

5

> you've heard that there was a procedure at Marietta Memorial Hospital where employees, at the conclusion of their shift, check a box: I didn't get lunch; so you can get paid. The hospital processes that and it pays. That's what that is all about. They're trying to weave that into this case to make it sound like the hospital is a bully.
>
> Somehow people aren't getting their lunches and they're not getting paid. Well, the first part of that happens. This is a nursing profession. You've heard it over and over again. If you've got a patient – and they talk about acuity, the level of acuity, the level of discomfort or the medical condition they have. You might need to attend to that patient during your lunch hour. You miss your lunch. The question is whether you get paid. The hospital has a procedure for getting paid.
>
> So you heard about that time and time again. In fact, Plaintiff Butler said I got tired of checking that box. You got tired of getting paid? Again, that's a question for another day that you don't have to decide.

(Doc. 80 at 6-7.) Plaintiffs contend that Defendant's blatant disregard for the Court's instructions had the effect of confusing the issues for the jury.

Plaintiffs' argument is overblown. The Court's in limine Order instructed the parties that they were prohibited from attempting to "litigate the merits of their FLSA class-action suit in this forum." (Doc. 73 at 9.) That same Order, however, recognized that some references to the class-action suit would be necessary. (*See id.*) Defendant's closing argument did not cross this line. Indeed, Defendant referenced the class-action suit for two permissible reasons: (1) to undercut Plaintiffs' retaliation claims by noting there were two-thousand other hospital employees who were potentially part of the class-action suit and who did not face retaliation; and (2) to explain that all the testimony surrounding the hospital's lunch policy was only minimally relevant to this case. There was nothing improper about Defendant's closing argument on this subject.[2]

---

[2] Plaintiffs also argue that Defendant conflated the opt-in class (which had less than 200 members) with the opt-out class (which had thousands of members). But even if so, Defendant's argument remains factual: there were other hospital employees who were potentially a part of the class-action suit and who did not face retaliation.

Finally, Plaintiffs argue that Defendant improperly told the jury that admitted evidence was hearsay. Namely, Plaintiffs refer to Defendant's statement about Morgan Pittman, a witness who did not testify:

> Let me say something about Ms. Pitman. They made a big deal about Ms. Pittman. And I'm sorry I can't remember her first name. The reason I can't remember her first name is she didn't come to testify. They say Ms. Pittman got the job with Jackson Nursing. I don't know how anybody knows that. I think one of the plaintiffs testified she somehow knew. We call that hearsay. But Ms. Pittman didn't come here. I don't know when she quit. It was around the same time.
>
> But what you don't know -- and you can't draw any kind of inference and there was no circumstantial evidence. What you don't know is when the hospital received her resignation. And you don't know if that was prior -- before the time that Mr. Weaver negotiated the additional language on the contract with Jackson Nursing. So I will tell ignore this stuff about Ms. Pittman. She didn't come to court. We don't know what her story is. If she had come to court and we had a chance to examine her oath and we had her documents, then it would be fair game to talk about her. But it's not fair game now. It's only speculation.

(Doc. 80 at 8; Doc. 89 at 5-6.) Plaintiffs contend that if the evidence was hearsay, it would have been excluded and, therefore, Defendant mischaracterized the evidence, resulting in confusion for the jury.

Here, following closing argument, the Court instructed the jury that they could, unless otherwise instructed, consider the testimony of all witnesses. This would have necessarily included the testimony surrounding Ms. Pittman. Because the Court's instructions cured any potential prejudice caused by Defendant's statements, a new trial is not warranted. *See United States v. Carter*, 236 F.3d 777, 787 (6th Cir. 2001) ("As a general matter, juries are presumed to understand and follow directions from the court.").

### 2. Whether Defendant Violated the "Golden Rule" During Closing Argument

As an alternative ground for seeking a new trial, Plaintiffs argue that Defendant violated the "Golden Rule" during its closing argument. "Golden Rule arguments ask the jury to put

7

themselves in a party's place, inviting decisions based on bias and prejudice rather than consideration of the facts." *Life for Relief & Dev. V. Bank of Am., N.A.*, 2017 WL 3616498, at *4 (E.D. Mich. Aug. 23, 2017) (citing *Mich. First Credit Union v. Cumis Ins. Soc.*, 641 F.3d 240, 249 (6th Cir. 2011)). Plaintiffs assert that it was improper for the Defendant to make the following statement during closing argument:

> Who gets suspended for two days? Who in this room gets this kind of leeway where year after year her boss is telling her you've got to do better."

(*See* Doc. 80 at 10.)

Here, the Court finds that Defendant's argument was not improper. First, Plaintiffs failed to raise an objection at trial. Hence, Plaintiffs again face a higher burden in demonstrating prejudice. *See Smith*, 813 F.3d at 315 ("We require a heightened showing of prejudice when, as here, a party fails to object."). Second, Defendant's closing argument did not invite the jury to place themselves in the position of any party. Instead, Defendant was impressing upon the jury that it was reasonable to discipline an employee who failed to improve after being warned. Finally, even if Defendant did violate the Golden Rule to some extent, there is little evidence to suggest that Defendant made this singular statement with the purpose of inflaming jury prejudice. *See Life for Relief & Dev.*, 2017 WL 3616498, at *4 ("Improper arguments made during opening or closing statements do not require reversal when isolated and not made with deliberate intent to inflame jury prejudice[.]"). Accordingly, Defendant's alleged violation of the Golden Rule does not warrant a new trial.

### 3. Whether the Jury's Verdict was against the Weight of the Evidence

Plaintiffs' final ground for seeking a new trial is that the jury's verdict was against the weight of the evidence in this case. Plaintiffs argue that Defendant's entire case relied on the testimony of Dan Weaver, head of Human Resources at Marietta Memorial Hospital, who

maintained that he did not have knowledge of Plaintiffs' actions sufficient to engage in retaliation. Plaintiffs assert that because no reasonable jury could have believed Mr. Weaver's testimony, a new trial is warranted. The Court disagrees.

The Court instructed the jury at the close of this case that they were the sole judges of the credibility of the witnesses and the weight their testimony deserved. Further, that the jury was permitted to accept or reject the testimony of any witness, in whole or in part. Given that Plaintiffs' only grievance in this respect is whether the jury should have believed Mr. Weaver's testimony, a new trial is not warranted. *See United States v. Stone*, 487 F.2d 511, 512 (6th Cir. 1973) ("Appellant's basic contentions in this regard go only to the credibility of the witnesses, and while the testimony of the government witnesses was somewhat contradictory, the matter was solely for the determination of the jury.").

## V. CONCLUSION

For the reasons stated herein, the Court **DENIES** Plaintiffs' Motion for a New Trial [#80].

**IT IS SO ORDERED.**

                                                  /s/ Algenon L. Marbley
                                                 **ALGENON L. MARBLEY**
                                                 **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 3, 2020**